Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3404 | **DATE** | 8/23/2004 |
| **CASE TITLE** | MARY LESNIK V. COOK COUNTY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | AUG 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| DW | courtroom deputy's initials | 2004 AUG 23 PM 6:19 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARY LESNIK, | |
| Plaintiff, | |
| v. | No. 02 C 3404 |
| | Judge James B. Zagel |
| COOK COUNTY, | |
| Defendant. | |

DOCKETED AUG 24 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Lesnik filed a complaint on May 13, 2002 against Defendant Cook County ("the County") alleging national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e(3)(a). Lesnik, a U.S. citizen of Polish descent, worked as a nurse practitioner assigned to the Nephrology Clinic at Cook County Hospital until her termination on October 19, 2001. She was one of four nurse practitioners assigned to the Nephrology Clinic during the relevant time period, the others being Barbara Kenny (female/African American), Mary Joseph (female/East Indian), and Prema David (female/East Indian). Dr. George Dunea, a white male, was the Chairman of the Divison of Nephrology/Hypertension during the relevant time period. Pursuant to Illinois law, the Bureau of Health required all nurse practitioners to secure a collaborative agreement with a physician by July 15, 2001. Each nurse practitioner was responsible for securing an agreement, and a physician's decision to enter a collaborative agreement was strictly voluntary. Dr. Dunea notified Lesnik on October 10, 2001 that he would not enter into a collaborative agreement with her. On October 19, 2001, an administrative hearing was held at which Dr. Dunea recommended Lesnik's removal from practice. She was terminated effective October 19, 2001 for the stated



reason that she did not have a collaborative agreement with a physician. Count I of Lesnik's Complaint alleges disparate treatment on the basis of national origin and gender. Count II alleges a pattern and practice of retaliation purposely designed to punish her for assisting another nurse practitioner in the prosecution of her similar EEOC claims against the County. The County now moves for summary judgment on both counts.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The County bears the burden of showing that the record does not disclose a genuine dispute of a material fact. *See Haefling v. UPS*, 169 F.3d 494, 497 (7th Cir. 1999). I will draw all reasonable factual inferences in favor of Lesnik, the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A prima facie case of intentional discrimination combined with sufficient evidence for a reasonable jury to reject the County's nondiscriminatory explanations for Lesnik's suspension and termination is adequate to sustain a finding of liability for intentional discrimination, and, therefore, would preclude summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 140 (2000).

### Count I: Disparate Treatment

Under Title VII, an employer may not lawfully "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2. A plaintiff without direct evidence of

discrimination, such as an admission, may establish a prima facie case of disparate treatment by satisfying the three-part, burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 600 (7th Cir. 2001). Under this approach, Lesnik must show that (1) she is a member of a protected class, (2) she was meeting her employer's legitimate work expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated employees outside the protected class more favorably. *See McDonnell Douglas Corp.*, 411 U.S. at 802-03; *Lalvani v. Cook County*, 269 F.3d 785, 789 (7th Cir. 2001). If Lesnik successfully establishes her prima facie case, the burden shifts to the County to articulate a legitimate, nondiscriminatory reason for the employment action. *See Olsen*, 267 F.3d at 600. Lesnik then carries the burden of proving that the County's proffered reason was a pretext for discrimination. *See Id.*

Since the first element of the *McDonnell Douglas* test does not appear to be in dispute,[1] I will move directly to the second element, whether Lesnik has shown that she has met her employer's legitimate work expectations. The County argues that Lesnik cannot do this because she was suspended for failing to follow department protocol. It is undisputed that Lesnik did not provide the requisite notice to her department for her unscheduled absence. The hearing officer who heard the complaint filed against Lesnik found that Lesnik did not follow departmental protocol and suspended Lesnik for four days. However, a single citation does not definitively establish, for purposes of this motion, that Lesnik was not meeting the County's overall work requirements.

---

[1] Lesnik is a caucasian female of Polish dissent. This is sufficient to place within a protected class of individuals.

3

I move now to the third element of the *McDonnell-Douglas* test, which requires Lesnik to show that she was subject to an adverse employment action. To establish that an employment action qualifies as adverse, Lesnik must show a materially adverse change in the terms, conditions, or privileges of employment, and the action must be more disruptive than a mere inconvenience or the alteration of job responsibilities. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 932 (7th Cir. 1996). The County argues that the only possible adverse employment actions taken against Lesnik were her May 7, 2001 4-day suspension and her October 19, 2001 discharge, both of which had tangible job consequences. *See Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998).

Lesnik's Complaint alleges that Dr. Ahmed and Dr. Dunea subjected her to additional adverse actions. Lesnik alleges that Dr. Ahmed interfered with the performance of her job duties, threatened her, and told her that women are considered "nothing" and are "burned alive" in India for insubordination when they become "too outspoken about their rights." Lesnik presents no evidence, however, that Dr. Ahmed's conduct resulted in tangible job consequences or a change in her material working conditions. On the basis of Lesnik's allegations, Dr. Ahmed's conduct, which would be inappropriate and offensive if true, does not rise to the kind of severe and pervasive harassing conduct required to be considered an adverse employment action.[2] *See Hilt-Dyson*, 282 F.3d at 466.

---

[2] This is not to say that Dr. Ahmed's conduct was not harassment. Statements, like the ones alleged here, may constitute direct evidence of gender discrimination. But, since Lesnik makes no arguments concerning the direct method of proof for discrimination, she has waived any such arguments.

4

Lesnik further alleges that Dr. Dunea's written reprimand of her conduct and his refusal to sign her collaborative agreement constituted disparate treatment. The Seventh Circuit has ruled that such a reprimand is not alone an adverse employment action under Title VII unless it is accompanied by job loss or demotion. *See Krause v. City of La Crosse*, 246 F.3d 995 (7th Cir. 2001). Accordingly, I find that the reprimand was not an adverse action within the meaning of Title VII.[3] Dr. Dunea's refusal to enter into a collaborative agreement presents a more difficult question. I think the loss of job security caused by Dr. Dunea's refusal to enter into a collaborative agreement was sufficient to cause a material change to Lesnik's working condition and qualifies it as an adverse employment action.

The fourth and final element of the *McDonnell-Douglas* test requires Lesnik to show that she was treated less favorably than employees outside her protected class, a burden which the County claims has not been met. With respect to Lesnik's suspension, the County is certainly correct.[4] Lesnik has not presented any evidence of nurses who failed to properly report unscheduled absences going unpunished. As to Dr. Dunea's refusal to enter into a collective bargaining agreement with her and her ultimate termination, Lesnik has presented some minimal

---

[3] Even if I did treat the reprimand as an adverse employment action, it would make no difference in my decision here. Lesnik has not presented any evidence tending to show that Dr. Dunea had a discriminatory motive for making the reprimand.

[4] Since she could not establish similarly situated nurses were treated differently, I find that she cannot establish a prima facie case for discrimination on the suspension. Even if I have allowed her to continue on that point, it would not change my overall ruling. Lesnik cannot establish that the County's given reason for her suspension was a pretext for discrimination. Lesnik has presented no evidence to suggest that her suspension was based on any reasons other than her failure to adequately apprise the County of her intention to be absent from work for five days.

5

evidence of disparate treatment.[5] Lesnik points out that the three other nurse practitioners in her department who were not of Polish decent were able to secure collaborative agreements with physicians and, therefore, were not terminated.[6] When viewed in the light most favorable to Lesnik, this scant evidence is enough to establish the final element of her prima facie case for discrimination.

Once Lesnik has established her prima facie case for discrimination, the burden shifts to the County to give a legitimate, non-discriminatory reason for Dr. Dunea's refusal to enter into a collective bargaining agreement with Lesnik and for Lesnik's ultimate termination. Physicians are not compelled to enter into collaborative agreements with nurse practitioners. They may do so voluntarily, and nurse practitioners are responsible for securing their own collaborative agreements. Dr. Dunea's stated reasons for not signing an agreement with Lesnik were that she had been subject to previous disciplinary actions and that she had received complaints from other doctors concerning her conduct. So long as he did not refuse to collaborate with her because of her national origin, Dr. Dunea was within his right to refuse. Since Lesnik has not presented any evidence to suggest that these reasons were pretextual, I accept them as legitimate, non-discriminatory reasons for Dr. Dunea's actions and grant summary judgment on Lesnik's claims of discrimination.

---

[5] I am treating Dr. Dunea's refusal to enter into a collaborative agreement with Lesnik and her ultimate termination as a single event. I do this because Lesnik's failure to enter into a collaborative bargaining agreement with a physician was the reason given for her termination.

[6] Since the other nurse practitioners who established collaborative agreements were female, Lesnik has no basis in fact for her claim of gender discrimination on this point. Thus, I move forward solely on her allegations of national origin discrimination.

**Count II: Retaliation**

Title VII prohibits employers from retaliating against an employee who has accused the employer of violating the Act, opposed any practice made unlawful by Title VII, or who has testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a); *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 751 (7th Cir. 2002). Lesnik may prove a claim of retaliation through either the direct method proof or the indirect, burden-shifting method articulated in *McDonnell Douglas*. *See Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003); *Hilt-Dyson*, 282 F.3d at 465; *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). The County argues that Lesnik cannot establish retaliation under either method.

To establish retaliation under the direct method of proof using circumstantial evidence[7] Lesnik must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) that a causal connection or nexus exists between the protected activity and the adverse action. *See McKenzie v. Ill. DOT*, 92 F.3d 473, 483 (7th Cir. 1996); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir. 1989). To demonstrate a causal link, Lesnik must show that the County would not have taken the adverse action "but for" the protected expression. *See McKenzie*, 92 F.3d at 482; *Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469, 479 (7th Cir. 1995).

Lesnik claims that the County retaliated against her for assisting another nurse practitioner, Evelyn J.D. Szymanski, in the prosecution of her EEOC claims against Cook

---

[7] Lesnik has no direct evidence of discriminatory retaliation because she cannot provide any admissions made by the County.

7

County. Lesnik, in her Response to Defendant's Brief, mentions only her "open support of Szymanski" and states that she was identified as a friend and supporter of Szymanski, had often conferred with her concerning her claims, and agreed to testify on her behalf at her trial. Lesnik has not, however, presented any evidence that she actually testified, assisted, or participated in an investigation, proceeding, or hearing related to the EEOC claim. She has also not presented evidence that she opposed discrimination on Szymanski's behalf. While she makes conclusory statements about Dr. Raba's and Dr. Ahmed's knowledge of her relationship with Szymanski, they are unsupported by the evidence cited. At most, the evidence shows only that Lesnik volunteered to Ahmed that "[t]his may go further than the union, EEOC, Department of Labor, et cetera." The evidence demonstrates, therefore, only what Lesnik alleged in her Brief: that it may have been known that she was supportive of Szymanski's EEOC claim and may have discussed the case with her, neither of which are protected expressions. This limited involvement with out more does not rise to the level of a statutorily protected activity.

In any event, Dr. Raba's and Dr. Ahmed's knowledge is irrelevant because Lesnik does not contend they were responsible for taking any adverse employment actions against her. More importantly, Lesnik provides no evidence that Dr. Dunea was aware that Lesnik was supportive of Szymanski's case, let alone assisting or participating in it. She relies on temporal proximity, which is rarely sufficient to create a triable issue of fact. *See Stone*, 281 F.3d at 644. Without such evidence, Lesnik cannot sustain a prima facie case that Dr. Dunea initiated either the disciplinary action in May or her termination in October in retaliation for her support of Szymanski.

8

Lesnik also fails to present sufficient evidence of the third element, that a causal connection exists between her support for Szymanski and her suspension and termination. *See McKenzie*, 92 F.3d at 482. She does not show that the hearing officer, who suspended her, or Dr. Dunea, who declined to sign her agreement and pursued her termination, would not have taken those actions but for her support for Szymanski. *Id.* As noted above, she relies on only temporal proximity. *See Stone*, 281 F.3d at 644.

Even if Lesnik could establish a prima facie case, the County's stated non-discriminatory reason for terminating Lesnik would be enough to support summary judgment unless Lesnik could show that a genuine issue of material fact exists as to whether the County's stated reason is merely pretextual. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123-24 (7th Cir. 1994); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993). The reason given by the County was not only sufficient to motivate the discharge, it is based on fact and was required by Illinois law. As discussed above, Lesnik has not provided evidence that Dr. Dunea refused to enter a collaborative agreement in retaliation for her support of Szymanski. In fact, Dr. Dunea's decision to enter into a collaborative agreement with Lesnik would have been voluntary and is not otherwise required. Dr. Dunea stated that he did not enter into an agreement with Lesnik because other doctors had complained about her behavior and because she had been subject to disciplinary actions. Without evidence that he refused to sign the agreement for impermissible, discriminatory reasons, Lesnik cannot show that Dr. Dunea's stated reasons for not entering an agreement with her was pretextual. Her claim of retaliation must, therefore, fail using the direct method.

The indirect method of establishing a prima facie case depends on the same elements discussed above. *Stone*, 281 F.3d at 642. For the same reasons cited above, I cannot conclude that Lesnik has made out a prima facie case for retaliation using the indirect method. Even if she had presented evidence establishing a prima facie case, she has not offered sufficient evidence to show that the County's stated reason for terminating her or reprimanding her were merely pretext.

For the reasons stated above, the Defendant's Motion for Summary Judgment is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: AUG 2 3 2004